UNITED STATES OF AMERICA
IN THE FEDERAL DISTRICT COURT—WESTERN DISTRICT/MICHIGAN
SOUTHERN DIVISION (CIVIL)

107 Federal Bldg,  410 W Michigan Ave--Kalamazoo MI 49007  (269) 337-5706

LARRY AND NANCY HACKER,

    Plaintiffs

v

FARM SERVICE AGENCY, RISK MANAGEMENT
AGENCY, AMERICAN AGRICULTURAL INURANCE COMPANY,
FEDERAL CROP INSURANCE CORPORATION,

    Defendants
_____/

REBECCA SANFORD [P43776]
Sanford Law Office
Attorney for Plaintiffs
816 Ship Street
Saint Joseph  MI  49085
269/983-0151
_____/

File No. 2015-
Hon.

**COMPLAINT**

NOW COME Plaintiffs', Larry and Nancy Hacker, by their attorney Rebecca Sanford, and for their complaint state as follows:

### JURISDICTIONAL FACTS

1.    Plaintiffs are farmers and residents of Stevensville, Berrien County, Michigan.

2.    Defendant FARM SERVICE AGENCY and RISK MANAGEMENT AGENCY are agencies of the United States Department of Agriculture, with Farm Service Agency in Berrien County, Michigan.

3.    Defendant American Agricultural Insurance Company is an insurer doing business in Berrien County, Michigan.

4.    Defendant Federal Crop Insurance Corporation is a corporation of United States Department of Agriculture with its office in Washington, DC.

5.     This complaint originates out of a concord grape loss in 2009 in Berrien County,MI due to unseasonably cold and wet weather, and the resulting damage claim presented by the Plaintiffs to the various agencies for their grape loss.

6.     The amount in controversy is estimated to be no less than $75,630.00 under the governmental disaster payment program called 1-SURE and $84,970 under their applicable crop insurance policy with AAIC, calculated to the best of the Plaintiffs' ability.

7.     The complaint requires interpretation of an FCIC reinsured crop insurance policy, federal statutes, regulations, rules and programs, since the subject is a disaster payment that was not correctly made and an appraisal that violated FCIC rules and procedures.

## BACKGROUND FACTS

8.     In early May 2009, one of the Plaintiffs employees mistakenly applied the wrong chemical spray to a small portion of Plaintiffs' Concord grape and Niagara grape crops resulting in damage primarily to their Niagara grape crop, and a small amount of damage to their Concord grape crop.

9.     By mid-June 2009, it was clear that the small portion of the Concord crop that had been mistakenly sprayed was fully recovered.

10.    By September 2009, the Concord crop was healthy, however, unseasonably cold weather and rain resulted in the compromise of the photosynthesis of the vines, resulting in low sugar in the grapes, and if warmer & drier weather did not occur in the month of October, the crop would fail not because of uninsurable causes, but because the vines would not produce sufficient sugar to ripen the greenish pink grapes into the typical sugary deep purple required of Concords for sale on the market.

11.    The Plaintiffs immediately notified their crop insurer AAIC in September that there was only about 4-5 weeks left in the season, and the sugar was far too low, therefore, there may be an opportunity to harvest, but doubtful, and that Plaintiffs would sugar sample the crop under the terms of their applicable crop insurance policy.

12.    The Plaintiffs periodically videotaped and sugar tested the concord grape bunches to show the robust health, size, amount and color of the grape clusters, but the failure of the crop to ripen due to the cold and rainy temperatures rendered the Concord crop unmarketable.

13.    Normal harvesting time occurs during October, ending typically around Halloween +/- a few days), and at that time, the Concord crop was a complete loss due to no leaves, frost and sugars that were far too low for sale.

14. The basic biology of grapes (and all other plants) is such that once the leaves are lost on the vines, no more photosynthesis can occur, and thus, no more sugar produced by a plant, grapes or otherwise, so that it was fundamentally known in the industry, by RMA, FSA, and AAIC, that harvest of the grapes would not improve their sugar content and the sugar content was FAR too low for harvest, even though there was a robust grape crop with plenty of clusters of grapes.

15. The Plaintiffs religiously and regularly took sugar samples out of his own concern for the low sugar due to weather: low temperatures, cloudy days, and several rain events in October, both before and after season end.

16. The Plaintiffs' insurer AAIC initially certified the loss as a complete loss to RMA.

17. The Plaintiffs' insurer later submitted false appraisals of the crop to Plaintiffs for signature, as upon information and belief, no one from the insurer ever came out to sugar test or appraise the 22 blocks of Concord grapes, despite repeated requests by Plaintiffs to do so, which the Plaintiffs complained contemporaneously at the time.

18. As a result of the false appraisals, which the insurer submitted to FSA and RMA, the Plaintiffs 1-SURE crop disaster payment was inappropriately and significantly reduced.

19. The Plaintiffs have exhausted their administrative appeals.

20. During the administrative appeal process, their insurer produced internal documents to the government, and as result of this, Plaintiffs discovered an internal email provided by their insurer admitting to the fact that the AAIC adjuster never appraised the crops on the dates appearing on the appraisal worksheets and 10-19 days after the close of the season and after the leaves had long fallen from the vines, and thereby proving that the appraisals were fraudulent and simply fabricated.

21. In addition to the email(s), a critical analysis of the appraisals reveals that the insurer made up numbers that could not possibly exist for any Concord crop, for example, bunch size and weight are impossible resulting in impossible tonnage, except perhaps on the fictional world Pandora.

22. The Plaintiffs believe that the insurer fabricated the appraisals, used bunch size not typical of larger Niagara grapes for the Concord crop without realizing the gross error.

23. The Plaintiffs have provided this information to the various parties but the parties have refused to correct the crop information, universally referring them back to their insurer.

24. All programs, regulations, and rules require that correct and accurate crop information be utilized by the various agencies and parties, and that each agency is required to investigate fraud.

## COMPLAINT

25.     The United States Department of Agriculture (USDA) is a wholly owned corporation entitled the Federal Crop Insurance Corporation (FCIC), and two agencies, the Risk Management Agency (RMA) and Farm Services Agency (FSA).

26.     The Plaintiffs crop insurer for this loss was American Agricultural Insurance Company (AAIC), to which policy the Plaintiffs timely made a claim.

27.     The Plaintiffs crop insurance policy requires that the Plaintiffs obtain an interpretation from FCIC if a policy or procedure was not followed, and if there is a disagreement, follow through with the administrative appeal process up to and including the National Appeals Division and its director.

28.     The USDA has a disaster program called the "1-SURE" (7 CFR 760) program, which provides supplemental revenue for crop disaster benefits above private insurance payments, based upon whole farm revenue and production, to which program the Plaintiffs timely applied for payments.

29.     The 1-SURE program is administered by the FSA, using farm production data provided to it by RMA, which receives the data from the Plaintiffs insurer AAIC.

30.     AAIC provided the fraudulent appraisals to RMA, which appraisals independent of any fraud claim, also upon separate review of any fraud, failed to comply with USDA/FCIC regulations and handbook guidelines.

31.     If the appraisals were fraudulent, by definition they would violate regulations and handbook guidelines.

32.     If the appraisals were not fraudulent, independently, they provided artificially inflated production data in violation of regulations and handbook guidelines.

33.     The Plaintiffs failed to receive their insurance benefit through AAIC, and as a result of the AAIC fraud and/or inappropriate production data, their production numbers were fraudulently and/or inappropriately inflated and provided to RMA, which agency (RMA) provided the false and/or inflated numbers to FSA in their reporting document (entitled the "SIR"), which in turn resulted in an artificially low disaster relief payment through the 1-SURE program administered by FSA.

34.     The USDA requires its agencies RMA and FSA, and its corporation FCIC and its reinsured insurance agencies including AAIC, to follow two handbooks when appraising crop losses called the Loss Adjustment Manual ("LAM"), publication FCIC 25010, and grapes in particular, Grape Loss Adjustment Standard Handbook ("GLASH"), publication FCIC-25230, in addition to 7 CFR 760.

35. The AAIC adjusters not only created fraudulent appraisals, but in addition, when attempting to explain the process, wholly violated the LAM, GLASH and 7 CFR 760 requirements for appraisals which require specific actions be taken during the appraisal process, which actions were not done, including actual appraisals.

36. AAIC adjusters Mark Schwandt and Don Nelson conspired to create false appraisals, claiming that four of the five appraisals were done on a day that they **thought** the Plaintiffs were not present due to a cataract surgery after harvest was over, but actually, the Plaintiffs and numerous employees **were** present, and no insurance adjuster appeared that day on their farms.

37. Mark Schwandt created the fifth alleged appraisal supposedly 9 days later, after Mark Schwandt admitted in an internal email to Don Nelson that he had not performed any concord appraisals to date, yet after receiving instructions back from inside adjuster Don Nelson, produced the final appraisal the next day, for a farm immediately adjacent to one of the other locations which were already allegedly appraised.

38. The appraisals included tonnage that is physically impossible upon critical review.

39. The false and impossible appraisals violated the LAM and GLASH handbook procedures in many respects, not the least of which requires the insurer to notify the insured & schedule appraisals so that the insured can be present, requiring videotaping, and sugar testing when a quality loss has been claimed.

40. When the Plaintiffs received the false appraisals, they IMMEDIATELY demanded that AAIC comply with the LAM and GLASH and reappraise with the Plaintiff present, which demand was not actually ignored, it was REFUSED by Mark Schwandt.

41. The Plaintiffs have exhausted the administrative process, notified all parties of the violations and fraud, and yet no agency, nor the FCIC, nor the NAD nor the Director has determined whether the appraisals were, indeed fraudulent and/or failed miserably to comply with the LAM and GLASH procedures and handbook and Act 7 CFR 760 requiring the agencies to determine that the Plaintiffs production figures be utilized for all purposes including the AAIC insurance claim and the 1-SURE application..

42. The Plaintiffs have provided their own production data to the respective agencies, including but not limited to documentation and videotaped evidence of the condition of the concord grape crop as well as repeated videotaped sugar testing.

43. If the appraisals violated LAM and GLASH, and failed to comply with other USDA regulations, and/or were fraudulently created, then AAIC violated FCIC program rules and procedures, and this is subject to court determination.

44. The RMA through Jodie Tate has previously determined that the FSA is required to administer the 1-SURE program and any inaccuracies in the SIR report upon which it is based.

45. The FSA through its agent Tim Stein has taken the position that inaccuracies in the SIR report are the province of the RMA.

46. In addition, the agencies have redirected the Plaintiffs back to AAIC, the source of the alleged fraud, ignoring the independent claim that the appraisals violated USDA requirements and requiring their own production data be substituted.

47. Neither agency has taken responsibility to determine the fraud and/or inaccuracies of the appraisals submitted by AAIC, with the result that the Plaintiffs' 1-SURE disaster payment was artificially reduced.

48. FCIC has also failed to address the inappropriate appraisals, again, referring the Plaintiffs back to AAIC, which is totally inappropriate as the Plaintiffs are seeking a determination that the appraisals were fraudulent and/or wholly and fatally fail to comply with the LAM and GLASH handbooks promulgated by FCIC and 7 CFR 760, in violation of its own requirements to conduct inquiry into fraud (for example, 7 USC 1514) and potentially disqualify AAIC for a period of up to 5 years from participating with FCIC if determined that it committed fraud.

WHEREFORE, Plaintiffs request that this court evaluate the AAIC appraisals under the FCIC LAM and GLASH handbooks and 7 CFR 760, determine whether pursuant to those handbooks, regulations and statutes, the appraisals were fraudulent and/or wholly and fatally in violation of those procedures to the extent that either RMA and/or FSA should have corrected the information in the SIR report upon which the 1-SURE handbook is based, as well as whether FCIC should have determined the appraisals in violation, which would have resulted in the insurer being required to make payment pursuant to its crop insurance policy and Plaintiffs receiving the appropriate amount of payment under the 1-SURE program.

Dated: June 10, 2015

_____
Rebecca Sanford, Attorney for Plaintiffs

Sanford Law Office, 2724 Niles Avenue, St. Joseph, MI  49085 P:269/983-1803 F:888/983-1837 Sanford.LawOffice@gmail.com